IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROBERT ALAN DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-03119 |
| | ) | |
| BOB W. RICHTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter comes before the Court on Plaintiff Robert Alan Davis' Motion for Temporary Restraining Order and Preliminary Injunction (d/e 2) ("Motion"). For the reasons that follow, the Motion is GRANTED IN PART.

BACKGROUND

On April 30, 2012, Plaintiff filed a Verified Complaint (d/e 1) (Complaint) against Defendants Bob W. Richter ("Richter"), David M. Kaylor, Steven W. Kaylor, Richard E. Kaylor, Earnest Kaylor (collectively

"the Kaylors"), and Valley Land & Cattle Company ("Valley Land"). The two-count Complaint alleges breach of contract and seeks specific performance and declaratory relief. In the Motion, Plaintiff seeks a preliminary injunction and temporary restraining order ("TRO") prohibiting Defendants Richter, David Kaylor, Steven Kaylor, Richard Kaylor, and Earnest Kaylor from proceeding with the sale, purchase, or transfer of Earnest Kaylor's shares in Valley Land to any and all parties pending resolution of Davis' claims and from selling or otherwise transferring any shares of Valley Land currently owned by Defendants.

The Complaint (signed under penalty of perjury by Plaintiff's counsel) explains that Plaintiff, Richter, and the Kaylors are shareholders in Valley Land, a farming operation in Quincy, Illinois. Plaintiff alleges that the Kaylors were employed by Valley Land from 2000 to 2007. Plaintiff alleges that, in 2007, the Kaylors terminated their employment with Valley Land and began working for a separate company owned and operated by Richter but failed to inform Plaintiff that the Kaylors had terminated their employment with Valley Land. Further, Plaintiff alleges

that from 2007 to 2009, the records of Valley Land incorrectly reflected that the Kaylors were still employed by Valley Land.

On February 10, 2000, Plaintiff, Richter, and the Kaylors entered into an Agreement Regarding the Shares of Valley Land & Cattle Co., Inc. ("Agreement").  Under the terms of the Agreement, which is attached to the Complaint, Plaintiff, Richter, and the Kaylors agreed to certain restrictions regarding their ownership of shares in Valley Land. Section 6 of the Agreement provides that the occurrence of certain events, including the termination of employment by a shareholder who is also an employee of Valley Land, creates a mandatory obligation to purchase one or more shares from another shareholder.  Section 4 of the Agreement requires a shareholder whose shares are subject to a mandatory purchase obligation to give notice to Valley Land and the other shareholders upon the occurrence of an event triggering the mandatory purchase obligation.

According to Section 7 of the Agreement, the mandatory obligation to purchase such shares is first assigned to Plaintiff.  Under the

Agreement, if Plaintiff does not purchase the shares, then Valley Land has a mandatory obligation to purchase the shares. If Valley Land does not purchase the shares, then the remaining shareholders are required to purchase the shares according to the percentage of total shares owned by the remaining shareholders.

The purchase price for the shares is to be determined according to Section 13 of the Agreement, which states that "the value of shares shall be the book value of such shares as determined on the last day of the month immediately preceding the event requiring valuation, subject to the adjustments and rules set forth in this Agreement."

Plaintiff alleges that on December 8, 2011, Earnest Kaylor sent a letter to all other shareholders of Valley Land notifying them that he was "voluntarily resigning [his] employment with [Valley Land]." The letter also stated that "pursuant to the [Agreement] that [his] twelve (12) shares are subject to mandatory purchase by [Davis] according to the terms and conditions of the Agreement." On December 13, 2011, Davis responded to Earnest Kaylor's notice, by handwritten note, stating that

he wished to exercise his option to purchase all of Earnest Kaylor's shares in Valley Land.

In March 2012, Plaintiff discussed the mandatory purchase obligation with Richter and learned from Richter that the Kaylors had actually terminated their employment with Valley Land in 2007.

Defendants notified Plaintiff that he must pay $798,251.28, as purchase price for Earnest Kaylor's twelve shares, to Earnest Kaylor on May 1, 2012. Defendants stated to Plaintiff that if Plaintiff does not pay the requested amount, Plaintiff will be in breach of the Agreement and will otherwise forfeit his right to purchase the shares.

In the Motion, Plaintiff alleges that pursuant to Section 13 of the Agreement, the valuation of Valley Land's shares must be performed on the last day of the month immediately preceding the termination of employment. Therefore, Plaintiff alleges, the proper valuation of the shares should be based on the value of Valley Land as of the month preceding the Kaylors' termination of employment in 2007. Plaintiff alleges that Defendants improperly calculated the value of the shares as

of December 31, 2011, thereby arriving at the incorrect and inflated purchase price of $798,251.28.  Plaintiff alleges that, although an exact figure cannot be determined at this time due to the uncertainty of precisely when the Kaylors' employment was terminated, the correct purchase price for Earnest Kaylor's shares, based on the value of the land in 2007, should be $540,000 or "likely far less."

Plaintiff requests a TRO, pending resolution of the Motion for Preliminary Injunction, prohibiting Defendants from (a) proceeding with the sale, purchase, or transfer of Earnest Kaylor's shares in Valley Land to any and all parties pending resolution of Plaintiff's claims and (b) selling or otherwise transferring any shares of Valley Land currently owned by Defendants.

On May 2, 2012, this Court held a telephone conference with counsel for Plaintiff, Defendant Richter, and the Kaylor Defendants.  At the hearing, the parties agreed to have the contested shares held in escrow with the secretary of Valley Land in Quincy, Illinois, until this Court rules on the issue of the TRO.  The Court directed Defendants to

respond to Plaintiff's Motion by May 9, 2012 and directed Plaintiff to file any reply to Defendants' response by May 11, 2012. The Court scheduled a telephone hearing for May 11, 2012.

At the May 11, 2012 hearing, this Court granted Plaintiff's Motion with respect to the TRO, with written order to follow. The Court scheduled a hearing on the Motion for Preliminary Injunction for June 5, 2012, at 9:00 a.m.

## JURISDICTION AND VENUE

Federal subject matter jurisdiction over Count I of the Complaint is proper on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. The Court has jurisdiction over the remaining state claim pursuant to its supplemental jurisdiction. See 28 U.S.C. § 1367(a).

This Court must determine personal jurisdiction by reviewing the Illinois Long-Arm Statute (735 Ill. Comp. Stat. 5/2-209) and due process. Our Lady of Bellefonte Hosp. v. Ashland GI Services, LLC, 2012 WL 787199, at *2 (N.D. Ill., Mar. 9, 2012) (citing Textile Banking Co. v. Rentschler, 657 F.2d 844, 852 (7th Cir. 1981)). This Court has personal

jurisdiction over Valley Land, a Kansas corporation, because its principal place of business is alleged to be in Pike County, Illinois, which is located in the Central District of Illinois. 735 Ill. Comp. Stat. 5/2-209 (b)(4) ("A court may exercise jurisdiction in any action arising within or without this State against any person who . . . [i]s a natural person or corporation doing business within this State."). This Court has personal jurisdiction over Defendant Richter because Richter is alleged to be a director or officer of Valley Land, a corporation having its principal place of business in Illinois. See 735 Ill. Comp. Stat. 5/2-209 (a)(12). This Court has personal jurisdiction over Richter and the Kaylors because: (a) they were involved in the making or performance of a contract substantially connected with Illinois (see 735 Ill. Comp. Stat. 5/2-209 (a)(7)); and (b) they were involved in the transaction of business within Illinois (see 735 Ill. Comp. Stat. 5/2-209 (a)(1)) as shareholders and/or employees of Valley Land during a portion of the time period relevant to this case.

Venue exists because Defendant Valley Land is located in Quincy, Illinois, which is in this judicial district, and a substantial part of the

events giving rise to Plaintiff's claims occurred in this judicial district. See 28 U.S.C. § 1391.

## ANALYSIS

Count I of the Complaint is a state law breach of contract claim that seeks specific performance of the Agreement. According to Plaintiff, Defendants have notified Plaintiff that he will be in breach of the Agreement and otherwise forfeit his right to purchase Earnest Kaylor's shares if Plaintiff does not pay $798,251.28, the value of those shares calculated by Defendants, to Ernest Kaylor on May 1, 2012. Therefore, Plaintiff has asked the Court to grant a TRO until a hearing on Plaintiff's request for a preliminary injunction can be held.

To obtain a TRO, a movant must show that: (1) he is reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) he will suffer irreparable harm that, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. See Joelner v. Vill. of Washington Park, Illinois, 378 F.3d 613, 619 (7th Cir.

2004) (stating requisite elements for a TRO); <u>Goodman v. Illinois Dep't of Fin. and Prof'l Regulation</u>, 430 F.3d 432, 437 (7th Cir. 2005) (internal citations omitted) (stating that a movant bears the burden of proof). "If the movant can meet this threshold burden, then the inquiry becomes a 'sliding scale' analysis where these factors are weighed against one another." <u>Joelner</u>, 378 F.3d at 619. "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." <u>Roland Machinery Co. v. Dresser Industries Inc.</u> 749 F.2d 380, 387 (7th Cir. 1984).

Here, all the factors weigh in favor of granting a TRO. Plaintiff has shown a strong likelihood of success on the merits of his claim for breach of contract. The Agreement states that the Agreement is to be construed in accordance with the laws of the State of Missouri. Under Missouri law, an action for breach of contract requires the plaintiff to demonstrate: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the

contract by the defendant; and (4) damages suffered by the plaintiff." Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. 2010). In this case, the parties do not dispute the existence of the Agreement. In the Verified Complaint, Plaintiff has provided the Court with a copy of the Agreement, and Plaintiff has alleged that Defendants have claimed that they will hold Plaintiff in breach of that Agreement if Plaintiff fails to purchase Earnest Kaylor's shares at the stated price on May 1, 2012. Plaintiff has also alleged facts showing that Plaintiff performed pursuant to the Agreement and that Defendants breached the Agreement by (a) failing to timely report their termination of employment with Valley Land in 2007 and (b) improperly calculating the value of Earnest Kaylor's shares and then demanding that Plaintiff pay the inflated price or else lose his right to acquire the shares. In his reply to Defendant's Response to the Motion, Plaintiff also provided copies of Valley Land's Payroll Summaries that Plaintiff alleges show that Valley Land had no employees on its payroll in 2010 and 2011.

Additionally, Plaintiff has shown a likelihood of success on the

merits of his claim for specific performance because Plaintiff has shown there is no adequate remedy at law. Under Missouri law, the elements of a specific performance action are (a) the existence of a valid contract; (b) the defendant's breach of that contract; (c) the performance or tendered performance by the plaintiff; and (d) no adequate remedy at law. 35 Mo. Prac., Cont., Eq. & Stat. Actions Handbook § 29:2 (2012 ed.). Here, Plaintiff has alleged facts showing that, if Defendants were to sell any of Defendants' shares of Valley Land to another party, Plaintiff could not be fully compensated through damages because Plaintiff would have lost his opportunity to gain majority control of Valley Land.

Plaintiff has also shown likelihood of success on the merits of Count II of the Verified Complaint, which demands declaratory relief. In Count II, Plaintiff seeks a declaration that, pursuant to the Agreement, the proper valuation of the shares must be based on the book value of the shares on the last day of the month immediately preceding the actual date of termination of each of the Kaylor's employment with Valley Land. Plaintiff has shown a likelihood of success on the merits of this

claim by presenting to the Court a copy of the Agreement and identifying the terms of the Agreement that support his claim. Therefore, Plaintiff has shown a likelihood of success on the merits of his breach of contract claim, claim for specific performance, and request for declaratory relief.

Plaintiff has also sufficiently shown that no adequate remedy at law would suffice and that Defendants' sale of any of Defendants' shares of Valley Land to another party would result in irreparable harm that outweighs the harm that Defendants would suffer if the TRO is granted. See Joelner, 378 F.3d at 619. First, Section 30 of the Agreement states that irreparable harm will be assumed for any action between the shareholders founded on a breach of the Agreement and that no bond will be required to enforce an order granting injunctive relief based on the same. Section 30 also provides that no proof of damages will be necessary to obtain injunctive relief. Defendants argue that Section 30 of the Agreement is inapplicable because it applies only where there has been a "breach" or "threatened breach." Here, Defendants argue, Plaintiff has not demonstrated a breach or threatened breach. However,

because this Court has already found that Plaintiff has shown a likelihood of success on the merits of his breach of contract claim, this Court finds that Section 30 of the Agreement applies.

Second, this Court finds that Plaintiff has sufficiently shown that, if Defendants are not enjoined, Plaintiff will sustain substantial, irreparable harm.  Defendants have stated that Plaintiff must purchase the shares for $798,251.28—an amount Plaintiff alleges exceeds the proper value by at least $250,000—by May 1, 2012 or else lose the opportunity to purchase those shares.  If Plaintiff chooses not to purchase the shares at that price and then loses the opportunity to purchase the shares, he will lose the opportunity to become majority shareholder of Valley Land.  Therefore, Plaintiff will risk losing future ownership in Valley Land as well as his rights as a majority shareholder of Valley Land if no TRO is issued.

The Court finds that Defendants will not likely suffer any substantial harm by refraining from selling their shares until this Court is able to hold a hearing on Plaintiff's Motion for Preliminary Injunction.  Therefore, this Court finds that the irreparable harm that Plaintiff would

suffer if no TRO is issued outweighs the irreparable harm that Defendants will suffer if the TRO is granted. The Court further finds that issuing a TRO in this case will not harm the public interest.

This Court finds that a TRO is required to prevent irreparable harm until a hearing on the motion for preliminary injunction can be held before this Court.

## CONCLUSION

Accordingly, the Court GRANTS IN PART Plaintiff's Motion (d/e 2) and orders as follows:

1. Defendants are prohibited from proceeding with the sale, purchase, or transfer of Earnest Kaylor's shares in Valley Land to any and all parties pending resolution of Plaintiff's motion for a preliminary injunction.

2. Defendants are prohibited from selling or otherwise transferring any shares of Valley Land currently owned by Defendants pending resolution of Plaintiff's motion for a preliminary injunction.

3. By agreement of the parties, Defendants' shares of Valley Land

are to be held in escrow by the secretary of Valley Land in Quincy, Illinois, until resolution of Plaintiff's Motion for Preliminary Injunction.

4. A hearing on Plaintiff's Motion for Preliminary Injunction is set for June 5, 2012 at 9:00 a.m.  This Order's restraints shall dissolve at the close of that hearing, unless extended before that date and time.

If Defendants fail to comply with the terms of this Opinion, Defendants will be in contempt of this Court and subject to sanctions.

IT IS SO ORDERED.

ENTERED: May 15, 2012

FOR THE COURT:

                                      s/ Sue E. Myerscough
                                        SUE E. MYERSCOUGH
                          UNITED STATE DISTRICT JUDGE